## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-373

**MARY GAIL JOHNSON WEST**

**VERSUS**

**CENTRAL LOUISIANA LIMOUSINE SERVICE, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ALEXANDRIA CITY COURT
ALEXANDRIA CITY COURT, NUMBER 96,557
HONORABLE RICHARD ERIC STARLING, JR.

\*\*\*\*\*\*\*\*\*\*

## BILLIE COLOMBARO WOODARD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ned E. Doucet, Jr., Chief Judge, Billie Colombaro Woodard, and Jimmie C. Peters, Judges.

**AFFIRMED.**

Eugene Paul Cicardo, Jr.
Attorney at Law
Post Office Box 1128
Alexandria, Louisiana 71309
(318) 445-2097
Counsel for Plaintiff/Appellee:
    Mary Gail Johnson West

Joseph Richard Kutch
Attorney at Law
1010 Main Street
Pineville, Louisiana 71360
(318) 448-6155
Counsel For Defendant/Appellant:
    Central Louisiana Limousine Service Inc.

WOODARD, Judge.

Central Louisiana Limousine Service, Inc. (CLLS) appeals a judgment, awarding Ms. Mary Gail Johnson West $2,500.00 in damages for breaching its contract to provide her with a limousine service on her wedding day. We affirm.

\* \* \* \* \*

In February of 2002, Ms. West contracted with CLLS to secure rental of a limousine for her wedding day on June 29, 2002. She paid it a $100.00 deposit as their contract required. Unfortunately, the limousine in question experienced mechanical problems earlier in the day on June 29, 2002, requiring that CLLS take the limousine out of service until it could obtain a replacement part to repair the vehicle. Because CLLS was unable to obtain the part on June 29, it was unable to perform the services it had promised to Ms. West under the contract. Subsequently, it did return Ms. West's deposit to her. However, Ms. West filed suit against CLLS for its breach of the contract and claimed damages for emotional and mental anguish which its breach caused her throughout her wedding day. The trial court awarded her $2,500.00.

CLLS appeals this decision, alleging that the trial court erred by applying too narrow of a definition of "impossibility, as CLLS did everything that, reasonably, could be expected to provide Ms. West service, after it learned that the limousine would be unavailable.

CLLS filed a third-party demand against Go/Dan Industries, Inc., the manufacturer of a part which caused CLLS' limousine to become inoperable. However, this claim is not before us, as it was severed.

\* \* \* \* \*

STANDARD OF REVIEW

Louisiana Civil Code Article 1873 provides, in pertinent part:

> An obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance *impossible*.

1

(Emphasis added.)

Conversely, "[t]he nonperformance of a contract is not excused by a fortuitous event where it may be carried into effect, although not in the manner contemplated by the obligor at the time the contract was entered into."[1] Rather, "The *cas fortuit* [fortuitous event] must make the performance truly impossible."[2] In other words, if the fortuitous event prevents the obligor from performing his or her obligation in the manner contemplated at the time of contracting, s/he must pursue reasonable alternatives to render performance in a different manner before s/he can take advantage of the defense of impossibility.

By alleging that the trial court used too narrow a definition of "impossibility," CLLS attempts to categorize the alleged error as a legal error and circumvent the manifest error standard of review in this court. However, it is well settled that an obligor is not released from his duty to perform under a contract simply because such performance becomes more difficult or more burdensome.[3] The question of whether the fortuitous event was sufficient to relieve the obligor of performance or whether it, simply, made performance more burdensome depends on the particular facts and circumstances of each case, and is therefore governed by the manifest error standard of review, which we will apply.

**IMPOSSIBILITY OF PERFORMANCE**

In its oral reasons for judgment, the trial court stated:

> My appreciation is that once Mr. Cicardo [Ms. West's attorney] makes a prima facia [sic] case that the contract was not fulfilled the duty then or the burden then falls on the defendant to prove impossibility and one thing I didn't hear in the testimony was what efforts Mr. Patrick [CLLS's owner and operator] may have made to replace the limo, I didn't hear any testimony about him going, [sic] another company to see if they could have gotten a limo or do anything to that effect.

---

[1]*Dallas Hooperage & Woodenware Co.v. Creston Hoop Co.*, 161 La. 1077, 1078-79, 109 So. 844 (La.1926).

[2]La.Civ.Code art. 1873 (cmt.(d)).

[3]*Dallas*, 109 So. 844; *Schenck v. Capri Const. Co.*, 194 So.2d 378 (La.App. 4 Cir. 1967).

2

In its brief, CLLS asserts that,"considering the information available to Mr. Patrick at the time, it is unreasonable to require him to look for another stretch vehicle . . . ." We disagree. In fact, that seems to have been the most logical alternative. Louisiana Civil Code Article 1873 places a high standard on an obligor and calls for a common sense approach to alternatives which would satisfy its performance. The trial court was, simply, offering one possibility.

Interestingly, CLLS argues that Ms. West should have mitigated her damages by inquiring elsewhere for a vehicle once she found out about the problem. Thus, it, obviously, accepts that this would have been a reasonable solution. If it was reasonable for Ms. West, it was just as reasonable for CLLS to have inquired elsewhere in order to secure a limousine to meet its obligation to perform the contract. However, it provided no evidence that it even tried to do so. Instead, it testified that it had offered a substitute vehicle, a Cadillac Sedan DeVille, to someone on the telephone who it presumed to be Mary Gail Johnson West. However, Ms. West rebutted that it was not she, and, apparently, the trial court chose to discount its testimony.

Furthermore, even though its contract does not limit its duty to perform to the availability of a particular, or *one*, vehicle, CLLS primarily focuses on the fact that the *particular* limousine that it had intended to use for Ms. West's engagement was unavailable and, then, moved swiftly to shift the burden to Ms. West to mitigate her damages by securing a substitute vehicle. CLLS had the primary burden to, at least, attempt to provide a suitable vehicle before mitigation of damages would become at issue. Moreover, its defense that because its vehicle was disabled it was impossible for it to perform the contract is misplaced. We find no error in the trial court's ruling.

Finally, mitigation actually involves the *amount* of damages, rather than CLLS's liability for damages.[4] CLLS has not specified any alleged error in the amount of damages awarded. Thus, we decline to discuss the mitigation issue since it is not before us.

Accordingly, finding no error, we affirm.

---

[4]*Lacombe v. Buras*, 00-1145 (La.App. 3 Cir. 1/31/01), 778 So.2d 1181.

**CONCLUSION**

CLLS appeals a judgment in Ms. West's favor, awarding her $2,500.00 for damages due to CLLS's breach of its contract with her. We find no error in the trial court's judgment and affirm. We assign all costs of this appeal to Defendant/Appellant, CLLS.

**AFFIRMED.**